WATSON GRAVEL, INC., Appellant,

v.

TRI–STATE SERVICE STATION MAINTENANCE, INC., Appellee.

[Cite as *Watson Gravel, Inc. v. Tri-State Serv. Station Maintenance, Inc.*, 190 Ohio App.3d 295, 2010-Ohio-6278.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2010–06–142.

Decided Dec. 20, 2010.

Matthew R. Chasar, for appellant.

HENDRICKSON, Judge.

{¶ 1} Plaintiff-appellant, Watson Gravel Inc., appeals the decision of the Hamilton Municipal Court denying its request for attorney fees. We reverse the decision of the trial court.

{¶ 2} Watson Gravel entered into a contract with defendant-appellee, Tri–State Service Station Maintenance, Inc. ("Tri–State"), in which Watson Gravel agreed to provide gravel, materials, and/or shipping services to Tri–State. According to the contract, all invoices were due within 30 days and were subject to interest if not paid in time. The contract also included a clause regarding Watson Gravel's right to collect attorney fees should it need to bring action under the contract.

{¶ 3} On July 31, 2009, and August 8, 2009, Watson Gravel provided goods and services and invoiced Tri–State for $8,641.52. After Tri–State repeatedly failed to pay the invoices, Watson Gravel's attorney sent Tri–State a letter demanding payment in full by March 10, 2010. Within the letter, Watson Gravel's counsel stated that if Tri–State failed to pay the $8,641.52 invoice, he would commence legal action, and Tri–State would be required to pay "pre and post judgment interest, court costs, attorney's fees, and all other amounts provided for by law."

{¶ 4} After Tri–State did not pay the invoice as instructed, Watson Gravel filed suit in the Hamilton Municipal Court and later moved for default judgment when Tri–State did not respond to the complaint. The trial court granted Watson Gravel's motion for default judgment, but denied its request for reimbursement of the attorney fees associated with the litigation.

{¶ 5} Watson Gravel now appeals the trial court's decision to deny attorney fees, raising the following assignment of error.

{¶ 6} "The court improperly ruled that attorney's fees were not awardable as a matter of law."

{¶ 7} In its assignment of error, Watson Gravel argues that the trial court erred in denying attorney fees. We find this argument meritorious.

{¶ 8} In denying Watson Gravel's motion for attorney fees, the trial court applied the Ohio Supreme Court's holding in *Miller v. Kyle* (1911), 85 Ohio St. 186, 97 N.E. 372: "In this state it has been firmly established, and long and constantly maintained, that such contracts for the payment of counsel fees upon default in payment of a debt will not be enforced. * * * The conclusion is well sustained by the obvious tendency of such contracts to encourage suits." Id. at 186, 97 N.E. 372.

{¶ 9} However, we find the facts of the case at bar readily distinguishable from *Miller*. In *Miller*, the parties entered into a mortgage and note that contained stipulations for the payment of attorney fees if the maker should default. The court noted that in instances of debt default and collection, the inclusion of attorney-fee provisions was against public policy because the clauses tended to encourage suit.

{¶ 10} Unlike the mortgage and note in *Miller*, Tri–State and Watson Gravel entered into a contract for goods and services. The contract specifically included a clause regarding Watson Gravel's right to collect attorney fees should it need to bring action under the contract. "Upon Watson Gravel, Inc.'s written demand for accounts due under the Account Agreement and [Tri–State's] failure to tender payment in full, Watson Gravel, Inc. is entitled to all court costs and reasonable attorney's fees incurred in bringing any action under the Account Agreement." The distinction between a promissory note and a contract becomes important because as the Ohio Supreme Court has recognized, parties are free to negotiate terms of a contract, including the payment of attorney fees. *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702. In *Nottingdale*, the court established the distinction we now rely upon to determine that an award of attorney fees is proper in this case.

{¶ 11} The court first noted that Ohio courts follow the "American Rule" under which attorney fees are not recoverable " 'in the absence of a statute or *enforceable contract* providing therefor.' " (Emphasis omitted.) Id. at 34, quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.* (1967), 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475. The court then clarified its reasoning for permitting parties to create contractual provisions regarding attorney fees: "It has long been recognized that persons have a fundamental right to contract freely

with the expectation that the terms of the contract will be enforced. This freedom 'is as fundamental to our society as the right to write and to speak without restraint.' *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 231 N.E.2d 301. Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts." Id. at 36.

{¶ 12} While *Nottingdale* was specific to a noncommercial contract between a condominium's homeowners' association and one of its participants, courts have since applied the holding to commercial contracts between parties of equal bargaining power. See *Berry Network, Inc. v. United Propane Gas, Inc.*, Montgomery App. No. 22875, 2009-Ohio-2537, 2009 WL 1515695, ¶ 70 ("Contractual agreements to pay attorney fees have been upheld in commercial settings where parties are of equal bargaining power") and *Buckeye Check Cashing, Inc. v. Madison*, Cuyahoga App. No. 90861, 2008-Ohio-5124, 2008 WL 4436484, ¶ 21 ("The holding in *Nottingdale* has been expanded by this court to apply in commercial situations * * * where both parties had equal bargaining power").

{¶ 13} The Ohio Supreme Court has stated, "When the right to recover attorney fees arises from a stipulation in a contract, the rationale permitting recovery is the 'fundamental right to contract freely with the expectation that the terms of the contract will be enforced.' *Nottingdale* at 36, 514 N.E.2d 702. The presence of equal bargaining power and the lack of indicia of compulsion or duress are characteristics of agreements that are entered into freely." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 8.

{¶ 14} The record indicates that Watson Gravel and Tri–State were parties of equal bargaining power and that the contract was not entered into under compulsion or duress. Although the trial court noted that the contract was a fill-in-the-blank one, the parties both entered information on the blanks specific to the deal they were enacting, and they abided by the terms from January 9, 2008, until the breach after August 2009. More importantly, the parties disagreed over Watson Gravel's requirement within the contract that Tri–State secure a personal guarantor for all amounts owing under the contract. Tri–State refused to be bound by that specific contract term, and instead the parties negotiated terms that did not include a personal guarantor, thereby showing that the parties were of equal bargaining power and did not enter the contract under duress or compulsion.

{¶ 15} The court in *Wilborn* went on to state that in instances in which the parties are of equal bargaining power and the contract otherwise lacks indicia of compulsion or duress, "agreements to pay another's attorney fees are generally enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Wilborn*, 121 Ohio St.3d 546, 2009-Ohio-

306, 906 N.E.2d 396, at ¶ 8. The court has also held that "the trial court is in a better position to determine a fee award, for it may hold a hearing, take testimony, create a record, and otherwise evaluate the numerous factors associated with calculating an attorney fee award. * * * The trial court, on remand, to assess costs, can easily determine, either in a hearing or by reviewing affidavits, the reasonableness of fees to be awarded. The trial court, having final authority to assess costs, is in the best position to make such an award." *Klein v. Moutz,* 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, ¶ 13–14.

{¶ 16} We therefore remand the case so that after full consideration of the circumstances of this case, the trial court can determine whether the requested attorney fees necessary to litigate this cause at the trial level were just and reasonable. Watson Gravel's sole assignment of error is sustained.

{¶ 17} The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

POWELL, P.J., and RINGLAND, J., concur.